ANDREW, J.T.C.
This is a gross income tax case in which plaintiffs contest a final determination by the Director of the Division of Taxation that a trust known as the “John Seward Johnson 1963 Charitable Trust” (the trust) is not a “charitable trust” within the meaning of the New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 et seq., and is, therefore, subject to tax for capital-gain income realized by the trust.
*32 Plaintiffs, James E. Burke, David R. Clare and James Scott Hill, are the present trustees of a trust created by an agreement, dated December 31, 1963, in which John Seward Johnson transferred a number of shares of Johnson & Johnson common stock[1] to three individuals in trust for the uses and purposes set forth in the trust instrument.
In accordance with the second paragraph of the trust instrument, the trust is directed to pay its entire annual net income to educational, religious or charitable organizations described in sections 501(c)(3), 170(c) and 2522(a) of the Internal Revenue Code of 1954 or corresponding provisions of other revenue acts. These payments are to continue until either June 30, 2014 or the death of the last to survive of the settlor’s six named children and 11 named grandchildren alive when the trust was created, whichever is earlier.
Thus, in accordance with the trust instrument, the payments to charitable organizations will continue until the happening of the earlier event, but will stop no later than June 30, 2014. Depending on which event first occurs, the trust instrument makes various provisions for the settlor’s grandchildren or children of deceased grandchildren. The trust instrument, thus, provides that the exclusive beneficiaries of the trust shall be charitable interests until a stated event but not later than June 30, 2014, and thereafter, the exclusive beneficiaries are private or noncharitable interests.
In accordance with the terms of the trust, the trust principal may not be distributed until the termination of the charitable interests, and the trustees, under certain conditions, may sell *33 trust property, but the net proceeds of the sale must be added to, and held as, principal.
Plaintiffs point out that the trust has distributed over $10 million in gifts to charitable interests since its inception in 1963. Moreover, they project that approximately $26 million will be paid to charitable interests between now and the year 2014. The Director does not dispute that the trust has made substantial charitable gifts, including gifts to New Jersey charities, and, in all probability, will continue to do so until June 30, 2014.
During the period at issue in this case, i.e., 1976 through 1987, the trustees were under the impression that they were not obligated to file gross income tax returns or pay any tax to New Jersey because the trust was a “charitable trust” within the intendment of N.J.S.A. 54A:2-1, and thus, not subject to gross income tax.
Apparently, however, there may have been some doubt as to their initial impression, and therefore, plaintiffs filed gross income tax returns for tax years 1976 through 1987. After an audit and a number of adjustments by the Division of Taxation, the Director concluded that the only income of the trust subject to gross income tax was the capital-gain income realized by the trust as the result of the sales of stock in tax years 1977, 1979, 1982, 1983, 1986 and 1987. Although plaintiffs disputed this conclusion, they paid the tax and promptly filed refund claims with the Director which were denied.[2] Plaintiffs then filed a protest with the Director and requested a hearing. The hearing was held and the Director then issued a final determination stating that the trust was not a “charitable trust” within the contemplation of the Gross Income Tax Act, and thus, was not exempted from its taxing provisions.
*34 Thereafter, plaintiffs filed a timely complaint in this court. Plaintiffs’ complaint is in two counts. First, they contend that the trust is a “charitable trust” within the meaning of the Gross Income Tax Act and is thereby exempt from taxation under the act. Next, plaintiffs maintain in their second count, in the alternative, that if the Director’s interpretation is correct and the trust is subject to gross income taxation, then there should be an allocation made by the court of the taxable income based on the relative benefits to be derived from the income by both the charitable interests and noncharitable interests.
Plaintiffs now move for summary judgment on the first count of their complaint which, if granted, is dispositive of the entire litigation. The Director moves for summary judgment on both counts of plaintiffs’ complaint alleging there are no genuine issues of material fact and that he is entitled to judgment as a matter of law.
I.

Is the 1963 trust a “charitable trust” within the meaning of the Gross Income Tax Act?

In pertinent part, N.J.S.A. 54A:2-1 imposes a tax “on the New Jersey gross income ... of every ... trust (other than a charitable trust[)]____” As the Director indicates, the scheme of the act contemplates that the gross income of a trust is subject to tax either to the trust or to the beneficiary. N.J.S.A. 54A:5-3. When a trust is required to distribute income on a current basis or if the income is paid or credited currently to a beneficiary, the tax is imposed on the beneficiary. Ibid. If, however, income is not distributed or credited to the beneficiary, the income is taxable to the trust. Ibid.
Plaintiffs maintain, and defendant does not dispute, that, plainly in accordance with N.J.S.A. 54A:2-1, the income of charitable trusts is exempt from gross income tax. The present issue arises because plaintiffs claim that the trust is, in fact, a charitable trust, while the Director argues that it is not a charitable trust for purposes of the Gross Income Tax Act. It *35 is the Director’s position that a charitable trust is “a trust operated exclusively for a religious, charitable, scientific, literary or educational purpose.” Emphasis supplied. Clearly, in this case, the trust at issue is not devoted to exclusively charitable or public purposes. Plaintiffs, however, contend that a charitable trust need not be exclusively charitable and argue vigorously that the Legislature did not intend that a trust, such as the “John Seward Johnson 1963 Charitable Trust,” have exclusively charitable purposes in order to qualify for exemption from gross income tax.
Although the act exempts a “charitable trust” from gross income taxation it does not define the term. Plaintiffs advance essentially two arguments in support of their position. First, they assert the plain meaning of the term charitable trust demonstrates the trust at issue is, in fact, a charitable trust. Second, plaintiffs argue that, in the absence of a statutory definition of charitable trust in the act, this court should resort to the principle of statutory construction of in pari materia and look at, and consider, the Charitable Trust Law of 1971, N.J.S.A. 3B:ll-8 et seq., as an extrinsic aid in determining the meaning of “charitable trust” in the Gross Income Tax Act.
The Director, in response, argues that the plain meaning of the term charitable trust supports his understanding that, in order to constitute a charitable trust, a trust must have exclusively charitable purposes. As to the application of the doctrine of in pari materia, the Director contends that the principle of construction is inapplicable because the Charitable Trust Law of 1971 and the Gross Income Tax Act have entirely different purposes, and thus, cannot be considered together.[3]
*36 Pointing to the general rules of construction relative to statutes in this State, plaintiffs cite N.J.S.A. 1:1-1 in support of their argument relative to the plain meaning of the term charitable trust. N.J.S.A. 1:1-1 provides as follows:
In the construction of the laws and statutes of this state, both civil and criminal, words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language. Technical words and phrases, and words and phrases having a special or accepted meaning in the law, shall be construed in accordance with such technical or special and accepted meaning.
Plaintiffs maintain that, since “words and phrases” are required to be “given their generally accepted meaning,” the 1963 trust is in fact a charitable trust because, (1) the trust by its own terms is referred to as, and named, a “charitable trust,” and (2) individuals, particularly the Attorneys General of this State that have participated in trust accountings required of charitable trusts, have referred to, and accepted, the trust in question as a charitable trust.
Plaintiffs’ first point is not persuasive. What a trust is called is of little or no consequence. The real question is the effect and result of the trust. See Sheen v. Sheen, 126 N.J.Eq. 132, 135, 8 A.2d 136 (Ch.1939) (whether the instrument calls a gift charitable or not is immaterial, it is the effect and result of the trust which determines its nature).
Plaintiffs’ second argument as to plain meaning is equally unpersuasive. The argument is to the effect that the Attorneys General of this State have recognized the trust at issue as a “charitable trust” because they have participated in the regular accountings of the trust. R. 4:28-4(b) requires the giving of notice to the Attorney General of any action to which a “trustee of an inter vivos charitable trust is a party and of any other action involving a will by which property is devoted to a present or future charitable use or purpose____” Emphasis supplied. Plaintiffs assert that notice of six intermediate accountings were given to Attorneys General of the State pursuant to the rule and they participated in the accountings. *37 They contend that the notice to, and participation by, the Attorney General would have been unnecessary if the trust at issue were not a charitable trust.
The Director responds by stating that compliance with the court rule does not signify that a trust is in fact a charitable trust for gross income tax purposes. The reason is easy to understand. The purpose of the Gross Income Tax Act and the purpose of the court rule are not the same. As the Director points out, the Attorney General has common law responsibilities relative to the enforcement and protection of public charities. Matter of Estate of Yablick, 218 N.J.Super. 91, 98-99, 526 A.2d 1134 (App.Div.1987). The notice provision in the court rule was not designed to provide a definition of the term charitable trust, but rather to provide notice to the Attorney General of any proceeding involving property devoted to a present or future charitable use or purpose. Id. at 97, 99, 526 A.2d 1134. The responsibilities of the Attorney General are neither enlarged nor diminished by the notice provisions of the rule. Thus, the Attorney General is a necessary party even though the litigation involves wholly or partially charitable objects. See In re Pfizer, 33 N.J.Super. 242, 264, 110 A.2d 40 (Ch.Div.1954); Matter of Estate of Yablick, supra, 218 N.J.Super. at 99, 526 A.2d 1134.
The Director, also, cogently points out that, by participating in the trust accountings, the Attorney General was not representing the Division of Taxation or any other state agency, but instead was insuring that protection was afforded to the rights of charitable beneficiaries. Thus, the Attorney General’s participation in the accountings was not an approval of plaintiffs’ failure to file gross income tax returns or pay the tax.[4] See Matter of Estate of Yablick, supra at 100, 526 A.2d 1134.
*38 Interestingly enough, the Director also relies upon the plain meaning of the term “charitable trust” to support his position that the purposes of the trust must be exclusively charitable in order to be characterized as a charitable trust for gross income tax purposes. To begin with, the Director notes that New Jersey case law affirms and the Restatement, Trusts, 2d, reaffirms the proposition that only trusts with exclusively charitable purposes can be characterized as charitable trusts. See The Ministers, etc., Convention v. Thayer-Martin, 118 N.J.L. 465, 467-468,193 A. 795 (Sup.Ct.1937) (“mixing in a trust of charitable with non-charitable uses renders the trust void ... there is nothing legally charitable or benevolent for purposes of taxation in providing by will for one’s relatives by blood or marriage.”); Johnson v. Bowen, 85 N.J.Eq., 76, 82, 95 A. 370 (Ch.1915) (“the essential idea of a charitable trust is that the benefit of the trust is to be for the whole public or some large class of the public as distinguished from private persons.”); Woodstown National Bank, etc., Co. v. Snelbaker, 136 N.J.Eq. 62, 66, 40 A.2d 222 (Ch.1944) (“a gift partly charitable and partly not must fall.”); In re Butler, 137 N.J.Eq. 48, 49, 42 A.2d 857 (Prerog.Ct.1945), aff’d 137 N.J.Eq. 457, 45 A.2d 598 (E. & A.1946) (“a trust for the benefit of the descendants of the donor’s relatives is not a charitable trust.”); Noice v. Schnell, 99 N.J.Eq. 572, 577-578, 134 A. 81 (Ch.1926) (“It is settled in this State that if the trust sought to be established can be used for purposes not strictly charitable or partly for purposes charitable and partly for purposes not strictly charitable, the trust is invalid.”); Van Syckel v. Johnson, 80 NJ.Eq. 117, 120, 70 A. 657 (Ch.1912) (a mixing of charitable uses with objects not charitable is void); see also Restatement, Trusts 2d (1959), § 348 at 210, § 376 at 265, § 398 at 289-290, § 420 at 361-362.
Our Legislature is presumed to be familiar not only with the statutory law of this State, but also with the common law. *39 Yanow v. Seven Oaks Park, Inc., 11 N.J. 341, 350, 94 A.2d 482 (1953). Therefore, the common law definition of a charitable trust requiring exclusively charitable purposes is presumed to have been known by the Legislature when the Gross Income Tax Act, and particularly N.J.S.A. 54A:2-1, was enacted. Absent some indication to the contrary, it must be presumed that the common law requirements for a charitable trust are applicable when considering the Gross Income Tax Act. See National Lead Co. v. Sayreville Bor., 132 N.J.Super. 30, 38, 331 A.2d 633 (App.Div.1975); 2A Sutherland, Statutory Construction, (4 ed. 1984), § 50.03 at 277.
There is additional support for this conclusion in N.J.S.A. 1:1-1 even though it was cited by plaintiffs for a contrary conclusion. N.J.S.A. 1:1-1 provides that “technical words and phrases, and words and phrases having a special or accepted meaning in the law, shall be construed in accordance with such technical or special and accepted meaning.” Emphasis supplied. Clearly, the term “charitable trust” has an accepted meaning in the law as the above cited authorities demonstrate and which requires that a trust have exclusively charitable purposes to be characterized as a charitable trust.
Plaintiffs argue that if the Legislature had intended to exempt from gross income tax only those trusts with exclusively charitable purposes it would have incorporated some form of the word “exclusive” in the act. This contention is not convincing. To the contrary, since by common law principles a charitable trust had to have exclusively charitable purposes, had the Legislature intended to extend an exemption to a trust with partly charitable purposes and partly private purposes it would have, of necessity, provided a definition of charitable trust different from that provided by our decisional trust law.
It is in this regard that plaintiffs ask this court to construe the phrase charitable trust in pari materia with the Charitable Trust Law of 1971, N.J.S.A. 3B:ll-8 et seq. Plaintiffs maintain that general principles of statutory construction require all enactments relating to the same subject or having the same *40 general purpose to be read together in order to assist in the interpretation of statutory provisions. Plaintiffs contend that the Charitable Trust Law of 1971 demonstrates that the Legislature clearly had designated split-interest trusts[5] or trusts with both charitable and noncharitable purposes as charitable trusts.
Again, I do not find plaintiffs’ argument persuasive for a number of reasons. First, the principle of in pari materia need only be resorted to if the statute to be interpreted is unclear or ambiguous. 2A Sutherland, op. cit., supra, § 51.01 at 449. That is not the case here. The phrase “charitable trust” has only one meaning at common law and that requires a trust to have exclusively charitable purposes in order to qualify as a charitable trust. Plaintiffs point to no other express definition in the law, either decisional or statutory, hence, there is no doubt and no need to resort to extrinsic aids such as the doctrine of in pari materia to assist in determining the meaning of charitable trust as employed in N.J.S.A. 54A:2-1.
Second, as the Director points out, inasmuch as the Gross Income Tax Act and the Charitable Trust Law of 1971 deal with different subjects and have different purposes, there is no basis for treating the two enactments in pari materia. See 2A Sutherland, op. cit., supra, § 51.03 at 467-468.
The design of the Charitable Trust Law of 1971 was “to enable split-interest trusts and private foundation trusts [to continue] to qualify for ... tax exemptions available to those trusts under the Internal Revenue Code,” see N.J.S.A. 3B:11- *41 13, while the evident purpose of the Gross Income Tax Act was to impose a tax on the gross income of individuals, estates and trusts. N.J.S.A. 54A:2-1.
Third, even if I were to accept the proposition that the Charitable Trust Law of 1971 should be considered in an interpretation of the phrase “charitable trust” as used in the Gross Income Tax Act, the charitable trust law, itself, supports the Director’s interpretation of charitable trust. Plaintiffs assert that the charitable trust law provides “the only definition of a charitable trust to be found in New Jersey.” As a matter of fact, the charitable trust law does not expressly provide a definition for a charitable trust. Plaintiffs’ argument that it does is implied from the title of the act and the legislative statement appended to the law.
To be specific, the charitable trust law only defines “private foundation trusts”[6] and “split-interest trusts.”[7] A private foundation trust is one which is traditionally considered a charitable trust because it has exclusively charitable purposes, while a split-interest trust has both charitable and noncharitable purposes. Plaintiffs assert that, since the title of the law is the Charitable Trust Law of 1971, and as the law only describes two types of trusts, both must have been considered as charitable trusts by the Legislature.
Plaintiffs also point to the legislative statement attached to the original bill as further support for their conclusion. The legislative statement makes reference to “charitable trusts and private foundation trusts.” Since the law, itself, only defines *42 private foundation trusts and split-interest trusts, the inescapable conclusion, according to plaintiffs, is that the Legislature considered a split-interest trust to be a charitable trust.
Plaintiffs ask too much of a title and a legislative statement. Our courts have long recognized that the title of an enactment and a statement attached to the original bill are but general statements of policy and do not detract from the plain meaning of the language used in the statutory provisions. Gavin v. Skyline Cabana Club, 54 N.J. 550, 557, 258 A.2d 6 (1969). Neither the title nor the legislative statement can be used to expand or enlarge upon the meaning of the language employed in the act, itself. Swede v. Clifton, 39 N.J.Super. 366, 377-378, 121 A.2d 43 (App.Div.1956), aff'd 22 N.J. 303, 125 A.2d 865 (1956); Murray v. Nicol, 224 N.J.Super. 303, 311, 540 A.2d 239 (App.Div.1988).
The Charitable Trust Law of 1971, as previously indicated, does not define a charitable trust, but instead specifically defines a private foundation trust and a split-interest trust. See N.J.S.A. 3B:ll-9b., -9c. What is notable is the fact that the law defines a private foundation trust, traditionally known to have exclusively charitable purposes, as a “charitable trust,” N.J.S.A. 3B:ll-9b., but defines a split-interest trust as: “a nonexempt split-interest trust described in section 4947(a)(2)” of the I.R.C. Nowhere in the body of the Charitable Trust Law of 1971 is a split-interest trust referred to, or defined, as a charitable trust. If anything, the statutory definitions clearly demonstrate that the Legislature did not consider the two types of trusts as being the same.
In addition to the foregoing, there are two principles of statutory construction that support the conclusion that a “charitable trust” within the meaning of N.J.S.A. 54A:2-1 must be “a trust operated exclusively for a religious, charitable, scientific, literary or educational purpose.” First, exemptions from taxation “are to be construed narrowly.” Fedders Financial Corp. v. Taxation Div. Dir., 96 N.J. 376, 386, 476 A.2d 741 (1984); see also Fairlawn Shoppers, Inc. v. Director, Div. of Tax, 98 N.J.
*43 64, 78, 484 A.2d 659 (1984); Walter Reade, Inc. v. Dennis Tp., 36 N.J. 435, 440, 177 A.2d 752 (1962). When a taxpayer seeks an exemption, “the probable legislative intent is one of inclusion____” Fedders Financial Corp. v. Taxation Div. Dir., supra, 96 N.J. at 386, 476 A.2d 741.
It is plaintiffs’ burden, N.J.S.A. 54A:9-9(e), to establish that the trust at issue fits clearly within the exemption provision. Board of National Missions v. Neeld, 9 N.J. 349, 353, 88 A.2d 500 (1952). This, they have failed to do. In this case there is no evidence that the Legislature intended to exempt noncharitable interests from the impact of the Gross Income Tax Act.
Second, due deference is normally given to an interpretation of a statute by an agency that is charged with its enforcement. See Matter of Boonton Bd. of Ed, 99 N.J. 523, 534, 494 A.2d 279 (1985) (“an administrative agency’s interpretation of a statute it is charged with enforcing is entitled to substantial weight.”).
Here, the record reveals that the Director, since at least 1979, has taken the position that a trust must be exclusively charitable in order to be exempt from gross income tax.[8] In light of common law trust principles, the scheme of the Gross Income Tax Act and the common sense of the situation, I find that the Director’s interpretation is in accord with the statutory language, is manifestly reasonable, and therefore, must prevail. See Commissioner v. Engle, 464 U.S. 206, 224, 104 S. Ct. 597, 608, 78 L.Ed.2d 420, 434 (1984) (with respect to federal tax law the choice among reasonable interpretations is for the Commissioner of Internal Revenue, not the courts); see also Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 *44 A.2d 742 (1984) (“the agency’s interpretation of the operative law is entitled to prevail, as long as it is not plainly unreasonable.”).
II.

Is the entire capital gain subject to gross income tax?

In the second count of plaintiffs’ complaint they assumed for purposes of alternative pleading that this court would conclude that the Director’s interpretation of a charitable trust was correct. In that event, plaintiffs ask for a determination by this court that the “capital gain income received by the Trust ... be taxed in accordance with a correct and realistic allocation of said income based upon the relative benefits to be derived therefrom by both the corpus and income interests of the Trust.”
Plaintiffs seek an equitable allocation of the gross income because the taxation of the trust results in a monetary loss to the charitable interests in that it reduces the amount of principal that would be available to generate income for the charitable interests. This reduction would continue until, in all probability, June 30, 2014.
The Director, in response, notes that the trust agreement, in essence, precludes any allocation of the capital-gains tax because capital gains are allocated completely to principal, and therefore, the capital-gains tax must be accorded a similar allocation.[9]
Aside from the total speculation that would be involved in trying to determine the allocation that plaintiffs seek, there is simply no authority in the Gross Income Tax Act that would permit it. It is not the province of this court to devise or enact taxing schemes; that is strictly for the Legislature. As such, *45 absent some controlling authority, I cannot develop a method of income or tax allocation.
In light of the foregoing, the Director’s motion for summary judgment is granted. Plaintiffs’ motion is denied. The Clerk of the Tax Court will be directed to issue a judgment affirming the Director’s determination.

 The trust was originally funded with 12,730 shares of Johnson & Johnson common stock, but on February 25, 1964 an additional 7,100 shares were added and on December 21, 1964 another 7,500 shares were provided to the trust. Thereafter, due to numerous three for one stock splits and sales of a number of shares by the trust, the number of shares of Johnson & Johnson common stock in the trust became 729,930 as of December 8, 1983. In 1986, apparently, in order to achieve diversification in stock holdings, the trust sold 75,000 shares of the Johnson & Johnson stock leaving 654,930 shares in the trust, insofar as the record reveals, at present.

 Plaintiffs claim a refund of $200,718.14, while the Director asserts that, if plaintiffs are successful in this action, the amount of the refund is $190,456.51. The Director, however, indicates that this computational difference can be readily resolved.

 The Director also contends that the provisions of the Gross Income Tax Act are analogous to those in the Pennsylvania personal income tax, and therefore, the Pennsylvania act and court decisions interpreting that act should be considered by this court in the interpretation of the trust provisions of the New Jersey gross income tax. Plaintiffs justifiably object to this procedure because there has been no showing that our Legislature had the Pennsylvania act in mind when it adopted the Gross Income Tax Act. See 2A Sutherland, Statutory Construction (4 ed. 1984), § 51.06 at 510.

 The Director also notes that the issue of the subjectivity of the trust to the Gross Income Tax Act was not an issue in any of the trust accountings. Moreover, it is questionable as to whether the court in which the accountings were filed, i.e., the Chancery Division of the Superior Court, was the proper *38 forum for resolution of that issue. See generally N.J.S.A. 54:51A-13, -16 and R. 8:2(a) relative to the jurisdiction of the Tax Court concerning tax matters.

 Plaintiffs maintain that the trust at issue is a split-interest trust for federal tax purposes, and thus, is a charitable trust within the meaning of the Charitable Trust Law of 1971. The Director argues, however, that while the trust at issue may be treated as a split-interest trust for federal tax purposes, it does not meet the specific definition of a split-interest trust in the Charitable Trust Law, N.J.S.A. 3B:ll-9c., which requires a split-interest trust to be as described in I.R.C. § 4947(a)(2). The present trust does not comply with I.R.C. § 4947(a)(2)(C). It is unnecessary to resolve this question since I have determined that even if the trust at issue is a split-interest trust, it is not a charitable trust within the meaning of N.J.S.A. 54A:2-1.

 "'Private foundation trust' means a charitable trust which is a private foundation described in section 509(a) of the [Internal Revenue Code], including each nonexempt charitable trust described in section 4947(a)(1) of the [Internal Revenue Code] which is treated as a private foundation____” N.J.S.A. 3B:ll-9b.; emphasis supplied.

 “ 'Split-interest trust’ means a nonexempt split-interest trust described in section 4947(a)(2) of the code, but only to the extent that section 508(e) of the [Internal Revenue Code] is applicable to the nonexempt split-interest trust under section 4947(a)(2) of the code____’’ N.J.S.A. 3B:ll-9c.; emphasis supplied.

 Plaintiffs argue strenuously that the Director’s interpretation of "charitable trust” is not a rule, regulation or authoritative pronouncement that has the binding effect of law. The Director concedes this point, but advises that he only sought to establish that, at least since 1979, the Division has consistently taken the position, to be characterized as a charitable trust under the Gross Income Tax Act, a trust must be exclusively charitable.

 In this regard, the Director also notes that for federal tax purposes, the capital-gain income was not allocated on an actuarial basis between the charitable and noncharitable interests.